# United States District Court
## Northern District of Indiana

| | | |
|---|---|---|
| RACHEL ELIZABETH ROBERTS, | ) | Appeal from the United States |
| | ) | Bankruptcy Court, Northern District |
| Appellant-Debtor/Defendant | ) | of Indiana, Fort Wayne Division |
| | ) | |
| v. | ) | Case No. 1:14-CV-82  JVB |
| | ) | |
| YVETTE GAFF KLEVEN | ) | |
| | ) | |
| | ) | Bankruptcy Case No. 11-10940 |
| Appellee-Trustee/Plaintiff | ) | Adversary Proceeding No. 13-1098 |

## OPINION AND ORDER

This matter is before the Court on the appeal of Defendant/Appellant and bankruptcy

debtor Rachel Elizabeth Roberts ("Debtor") from a final judgment of the Bankruptcy Court for

the Northern District of Indiana, Fort Wayne Division.

### A.     Facts

Debtor filed for Chapter 7 bankruptcy on March 18, 2011.  In the course of her duties,

Plaintiff-Appellee and bankruptcy trustee Yvette Kleven ("Trustee") asked Debtor to turn over to

her: (1) a bank statement showing the balance in Debtor's savings account on March 18, 2011,

and all transactions from February 18 through March 18, 2011; (2) copies of Debtor's 2010 state

and federal income tax returns; and (3) receipts or other documentation verifying how Debtor

spent her 2010 income tax refunds.  The Trustee first requested these items at the first meeting of

creditors—the 341 meeting—conducted on April 29, 2011.  When they were not received, she

sent a letter dated August 5, 2011, requesting them, without results.

On May 9, 2012, still not having received the information, the Trustee filed a motion to

turn over property, requesting the three items listed above, as well as $99.33, representing the non-exempt pre-petition portion of her income tax refund for 2011. A hearing was held on the motion on June 25, 2012, but just before the hearing, Debtor's attorney told the Trustee that he agreed she was entitled to what she had asked for and would enter into an agreed order for the turnover of the items. On June 29, 2012, the bankruptcy judge ordered the parties to file the agreed order within twenty-one days. The Trustee prepared an agreed order and sent it to Debtor's attorney on July 5, 2012. When he had not responded by November 16, 2012, she wrote to Debtor's attorney again. Once again, she received no response, and on May 9, 2013, she once again asked that the turn over motion be set for a hearing. This time the Trustee and Debtor signed an agreed order that Debtor would provide the Trustee with all the items requested, which was filed on May 21, 2013, and approved by the bankruptcy judge on June 27, 2013.

When Debtor had not complied with the agreed order by August 12, 2013, the Trustee filed an adversary proceeding to revoke Debtor's discharge pursuant to 11 U.S.C. § 727(d)(3), which provides that the trustee request revocation of a discharge if the debtor has refused to obey a lawful order of the court. The Trustee also sought a money judgment of $99.33. After the adversary proceeding was filed, Debtor sent the Trustee a check for $99.33 and copies of her 2010 tax returns. However, she did not provide a bank statement showing the balance of her savings account as of March 18, 2011, and showing the transactions in that account from February 18, 2011, through March 18, 2011, until the day before the trial on the Trustee's adversary proceeding.

The bank statement showed that Debtor had received a tax refund of $6,569.10 on March

4, 2011, before her March 18 bankruptcy filing, and that she had made four separate withdrawals

from the account between March 8 and March 17, 2011, totaling $6,400.

The matter was tried to the bankruptcy judge on January 15, 2014.  The Trustee testified

as to the efforts she had made to secure the requested items and as to Debtor's withdrawals from

her savings account.  She asked the bankruptcy judge to revoke Debtor's discharge for requiring

her to spend three years and much time and energy chasing after information she should have

received before or at the first meeting of creditors.  She also asked for a money judgment of

$6,400.

Debtor testified that she had only been able to get a copy of the requested bank statement

in the past few weeks because her credit union had absolutely refused to give her the

information.  She claimed the bank manager was upset with her because she had defaulted on a

loan.  She explained that she withdrew the money from her account because she believed the

credit union was stealing from her to cover the loan she had defaulted on.  She transferred most

of the money to her stepfather's account and used it to live on and for repairs on a new home she

had recently moved into. She stated that she might have some receipts showing how the money

was spent.  The money was in her stepfather's account on March 18, 2011, when she filed

bankruptcy.  She testified that she did not believe she had to turn the money over to the Trustee

because she was advised that it was exempt.  She never listed her tax refund on her bankruptcy

schedules.

In his closing argument, the attorney for the trustee moved the court to amend the

pleadings to conform to the evidence to allege  28 U.S.C. § 727(d)(1) as grounds for revoking

Debtor's discharge.  Under § 727(d)(1), a discharge must be revoked if the discharge was

obtained through the fraud of the debtor.

Following the presentation of evidence and argument by the parties, the bankruptcy judge ruled from the bench, revoking Debtor's discharge and awarding the Trustee a money judgment of $6,400. In addition to relying on 28 U.S.C. § 727(d)(3)—refusal to obey a lawful order of the court—the bankruptcy judge found that the evidence supported revoking Debtor's discharge under § 727(d)(1) and (d)(2). Section 727(d)(2) requires revocation if the debtor acquired property of the estate and knowingly and fraudulently failed to report the property or deliver it to the estate.

**B.      Standard of Review**

The standard of review on appeal from a bankruptcy court judgment is set out in Federal Rule of Bankruptcy Procedure 8013:

> On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

**C.      Discussion**

The issues on appeal the Debtor identifies are whether the bankruptcy judge erred in revoking her discharged on the basis of her failure to comply with an order that did not specify a deadline for compliance and whether he erred in revoking the discharge on grounds other than those stated in the Trustee's complaint in the adversary proceeding. In her brief, she also requests that the money judgment be reversed.

4

Debtor has presented no pertinent authority for her claim that she did not refuse to comply with a Bankruptcy Court order because the agreed order did not include a deadline. In the absence of a deadline, Debtor had a reasonable time within which to comply with the agreed order, which she refused to do.

In explaining his ruling, the bankruptcy judge pointed out that debtors are obligated to provide the trustee with bank statements and certain tax returns before the first meeting of creditors is even held. *See* Fed. R. Bankr. P. 4002(b)(2)(B) and (3). In this case Debtor was reminded at the 341 meeting, but the documents were not produced. The Trustee sent a letter that was apparently ignored. She then filed a motion for turnover. At the hearing on that motion, the bankruptcy judge was told the parties had settled the matter and would submit an agreed order for turnover of the items. The bankruptcy judge ordered them to submit the agreed order within twenty-one days, but Debtor's attorney did not sign the agreed order for more than a year after he had promised to do so and still the requested items were not produced. Forty-six days after the agreed order was finally submitted and approved, the Trustee filed the adversary proceeding to revoke Debtor's discharge. At some unspecified time after that, Debtor turned over her 2010 tax returns and the $99.33, but did not produce the bank statement until the day before the trial, and never produced the receipts.

The record amply supports the bankruptcy judge's finding that Debtor refused to obey a lawful order of the bankruptcy court. In light of the history of this case, taking more than forty-six days to comply with the agreed order is unreasonable. The requested items were long overdue before Debtor's attorney signed the agreed order. Given the fact that the order was an agreed order, Debtor should have been prepared to comply with it promptly upon signing it. If

she couldn't comply she should not have agreed to provide the items. It may be inferred from Debtor's testimony that she did almost nothing to get a copy of her bank statement from the credit union. The record is devoid of any evidence as to when she asked for the statement, how she asked, or how often she asked. Debtor did not submit any evidence that she or her attorney did so much as send a letter to the credit union, much less attempt to subpoena the records or move for a Bankruptcy Rule 2004 examination of the credit union. As the bankruptcy judge found, her lack of effort to secure the statement constitutes a refusal to do so. The fact that Debtor ultimately gave the Trustee the bank statement—the day before the adversary hearing— does not excuse her refusal to provide it within a reasonable time after the approval of the agreed order. Moreover, the bankruptcy judge did not believe her explanation that the credit union manager had it in for her and wouldn't give her the bank statement. Furthermore, as the bankruptcy judge noted, even if she could not get the bank statement, she always had the ability to explain to the Trustee the basic facts that she had received a tax refund, deposited it in her credit union account, withdrew the funds, and transferred them to her stepfather's account. Finally, while Debtor cited her credit union's lack of cooperation for not producing the bank statement earlier, she offered no explanation for why, forty-six days after the approval of the agreed order, she had still not produced the other items.

Because the bankruptcy judge's decision to revoke Debtor's discharge on the basis of 28 U.S.C. 727(d)(3) as alleged in the Trustee's complaint is supported by the evidence, the Court will not reach the other statutory provisions he relied on in support of the revocation.

The Court finds no error with regard to the bankruptcy judge's award of a money judgment for $6,400. Debtor's only argument is that it was not the amount the Trustee asked for

in her complaint.  The Trustee's testimony regarding the amount came in without objection from

Debtor. Federal Rule of Civil Procedure 54(c), made applicable to adversary proceedings by

Bankruptcy Rule 7054, provides that a final judgment should grant the relief to which each party

is entitled, even if the party has not demanded that relief in the pleadings.  The evidence

admitted at trial justifies the conclusion that $6,400, representing Debtor's 2010 federal tax

refund, was property of the bankruptcy estate to which the Trustee is entitled.  Accordingly, the

award is affirmed.


**D.     Conclusion**

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.


SO ORDERED on November 14, 2014.

 s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division
